**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

Civil Action No. 1:23-CV-118

|  |  |
|---|---|
| MEDICAL SEARCH CONSULTANTS LLC, <br><br> Plaintiff, <br><br> v. <br><br> PASTURE GATE HOLDINGS, INC., PYXIS NYF LLC, MICHAEL ROBERT DUNMIRE, and DENISE MARIE DUNMIRE, <br><br> Defendants. | **FIRST AMENDED VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiff Medical Search Consultants LLC ("Plaintiff" or "MSC") brings this verified civil complaint for injunctive relief, damages, and other relief against Defendants Pasture Gate Holdings, Inc. ("Pasture Gate"), Pyxis NYF LLC ("Pyxis"), Michael Robert Dunmire, and Denise Marie Dunmire (collectively, "Defendants") for breach of contract, particularly certain non-competition, non-disclosure, and non-solicitation obligations that Defendants (excluding Pyxis) entered into before and during the operation of their franchise agreement with MSC, and their actual and threatened misappropriation of trade secrets. Plaintiff MSC seeks an order requiring those Defendants to, inter alia, immediately cease the operation of a business whose principals work in direct competition with MSC, cease disclosing and/or using MSC's confidential information and trade secrets, and otherwise abide by the express terms of Defendants' Franchise Agreement and related contracts with MSC.

Plaintiff also seeks injunctive relief and damages from Defendant Pyxis for the unauthorized use of MSC's trademark. In further support of its Verified Complaint, MSC states as follows:

## PARTIES

1.      Plaintiff Medical Search Consultants LLC is a limited liability company organized under the laws of the State of Florida. The company conducts business nationwide.

2.      Defendant Pasture Gate Holdings, Inc., is a corporation organized under the laws of the State of North Carolina.[1] Pasture Gate's principal place of business is in Mills River, Henderson County, North Carolina.

3.      Defendant Pyxis NYF LLC is a limited liability company organized under the laws of the State of North Carolina. Its principal place of business is in Mills River, Henderson County, North Carolina.

4.      At all times relevant herein, Defendant Michael Robert Dunmire was and is the president and/or chief executive officer of Pasture Gate. Mr. Dunmire also is a member of Defendant Pyxis. Upon information and belief, Mr. Dunmire is a resident of Henderson County, North Carolina.

5.      At all times relevant herein, Defendant Denise Marie Dunmire was and is an employee, independent contractor, and/or officer of Defendant Pasture Gate. Ms. Dunmire also is a member of Defendant Pyxis. Upon information and belief, Ms. Dunmire is a resident of North Plains, Oregon.

---

[1] Pasture Gate Holdings, Inc. is the successor-in-interest to Pasture Gate Holdings, LLC, a limited liability company organized under the laws of the State of North Carolina. On or about July 7, 2021, Pasture Gate Holdings, LLC, filed articles of conversion with the North Carolina Secretary of State, creating a new business corporation, Pasture Gate Holdings, Inc. Both Pasture Gate entities, being one in the same, are referred to throughout this Complaint as "Pasture Gate."

## JURISDICTION AND VENUE

6.     This court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

7.     In particular, with respect to Plaintiff MSC's claim for injunctive relief, MSC will suffer losses far exceeding $75,000 if an injunction does not issue. See JTH Tax, Inc. v. Frashier, 624 F.3d 635, 639 (4th Cir. 2010) (ascertaining the value of an injunction for amount in controversy purposes by reference to the injunction's worth to the plaintiff or its cost to the defendant).

8.     This court also has subject matter jurisdiction under 28 U.S.C. § 1331 because this action includes claims arising under the laws of the United States, particularly 18 U.S.C. § 1836, et seq., and 15 U.S.C. § 1114.

9.     Venue is proper in this district under 28 U.S.C. § 1391(b) on the grounds that Defendant Pasture Gate's principal place of business is in this district, Defendant Pyxis' principal place of business is in this district, and Defendant Michael Dunmire resides in this district. Further, Defendants Pasture Gate and Michael Dunmire agreed in a certain franchise agreement with Plaintiff MSC that:

> [w]ith respect to any action which includes injunctive relief, We may bring such action in any court in any state which has jurisdiction. You irrevocably submit to the jurisdiction of such courts and waive any objection You may have to either the jurisdiction or venue of such courts.

Franchise Agreement, defined <u>infra</u> at ¶ 19, at 1.63.[2] Lastly, venue also is proper because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

10.     Plaintiff MSC is a healthcare recruiting company that places healthcare professionals into full-time, permanent positions at healthcare facilities throughout the United States.

11.     Over a period of several years and through significant investments of time and money, MSC has developed systems for establishing, operating, and marketing permanent placement services that provide recruiting and placement services to the healthcare industry.

12.     Through its franchisees, MSC places professionals in acute care hospitals, ambulatory surgical centers, behavioral health centers, biotech companies, birth centers, dialysis centers, emergency and outpatient care centers, home health care businesses, hospice facilities, imaging and radiology centers, long term acute care hospitals, medical coding and billing centers, medical device manufacturers, mobile clinics, orthopedic and rehabilitation centers, outpatient centers, pharmacies, pharmaceutical companies, psychiatric hospitals, rehabilitation hospitals and/or clinics, skilled nursing facilities, and urgent care centers.

13.     When an MSC franchisee successfully recruits and places a prospective employee with an employer, the employer pays a fee to MSC, which then pays the franchisee.

14.     A significant component of MSC's business model involves the development of and sharing with its franchisees a system to provide recruiting for the placement of senior executives, and nursing, pharmacy, and allied health professionals to the healthcare industry under

---

[2] Pinpoint citations to the Franchise Agreement and other agreements cited herein are to the exhibit numbers affixed to those documents by Plaintiff. The Franchise Agreement is Exhibit 1.1-1.98 of the Declaration of Nadia Gruzd, filed contemporaneously herewith.

the trade name and service mark ALL MEDSEARCH®. MSC currently markets and sells franchises under that name and mark.

15.     ALL MEDSEARCH is a trademark that is registered with the United States Patent and Trademark Office (the "USPTO"). The trademark was registered on August 6, 2019, Registration No. 5,826,936. The registered work mark is ALL MEDSEARCH®, and the registered design, as described by the USPTO, consists of a semicircle and loop intersecting with a star below which is the word "All" in capital letters which is above the word "Medsearch" in all capital letters, as depicted below:



16.     Each MSC franchisee is an independent contractor, and safeguarding MSC's systems, trade secrets, and trademark is critical to MSC's viability as a business. MSC's value is substantially diminished if its franchisees share its proprietary information with other parties, especially competitors. Likewise, MSC's value is substantially diminished if it does not exercise control over its trademark.

17.     To safeguard its proprietary information, eliminate conflicts of interest, and maintain profitability, MSC prohibits its franchisees from working directly or indirectly with its competitors.

18.     MSC's contractual relationship with its franchisees is governed by a franchise agreement that includes, among other things, clear terms that prohibit the disclosure of trade secrets, direct or indirect work with MSC's competitors, or unauthorized solicitation of business and/or clients to its competitors.

19.     On or about September 15, 2020, MSC entered into a written franchise agreement (the "Franchise Agreement") with Defendant Pasture Gate, granting to Pasture Gate the right to establish and operate an ALL MEDSEARCH franchise for the recruitment and placement of healthcare professionals in the metropolitan Atlanta area and in any of its territories that had not yet been sold.

20.     The Franchise Agreement provides:

> On the terms and conditions of this Agreement, We hereby grant to You the right to establish and operate a MEDICAL SEARCH franchise as selected above and to use the Licensed Rights associated with the Franchised Business and developed by Us.[3]

Franchise Agreement at 1.7.

21.     The initial term of the Franchise Agreement is for a period of eight (8) years from the date of execution of the contract. Id. at 1.9.

22.     Defendant Michael Dunmire signed the Franchise Agreement on behalf of Defendant Pasture Gate. Id. at 1.67.

23.     Defendant Michael Dunmire, as guarantor, also executed the Guaranty Agreement, which states that:

> Guarantor personally and unconditionally makes all the covenants, representations and agreements of Franchisee set forth in the Franchise Agreement and that Franchisee is obligated to perform thereunder[.]
>
> *       *       *
>
> Guarantor unconditionally and irrevocably agrees to be personally bound by, and personally liable for the breach of, each and every provision of the Franchise Agreement by Franchisee[.]

Id. at 1.71-72.

---

[3] A "MEDICAL SEARCH" franchise includes a franchise that operates under the trade name and service mark "ALL MEDSEARCH."

24.     The "Licensed Rights" granted under the Franchise Agreement include the right to use MSC's "System," specifically defined as MSC's "unique experience,  special skills, techniques and knowledge, marks, concepts, and proprietary information[,]" "unique business systems for providing recruiting and placement services" for the health care industry, and "standards, specifications, methods, procedures, techniques, know-how, management directives, identification schemes, and proprietary marks and information in connection with the operation of the" ALL MEDSEARCH business. <u>Id.</u> at 1.5-1.6.

25.     The Licensed Rights and MSC System allows franchisees, including Pasture Gate, to access business and marketing plans, salary structures, customer lists, vendor contracts, computer system details, training manuals, and other proprietary information. MSC assembled this information and it is not available to the general public.

26.     With respect to the use of MSC's ALL MEDSEARCH trademark, Defendants Pasture Gate and Michael Dunmire agreed:

> No advertising or other use of the Marks by You shall contain any statement or material which, in Our sole judgment, We consider to be in bad taste or inconsistent with MSC's public image, or tends to bring disparagement, ridicule or scorn upon Us or Our affiliates or predecessors or successors or he Marks, or diminish Our associated goodwill. You shall not make any use of the Marks or any advertising material that We have disapproved for any of the reasons set forth in this Section. . . . You shall adopt and use the Licensed Rights only in the manner expressly approved by Us.

<u>Id.</u> at 1.8.

27.     By signing the Franchise Agreement, Pasture Gate agreed that:

> All of the enumerated Licensed Rights are recognized by the public as distinctive and valuable, and You recognize the potential benefits to be derived from being associated with and licensed by Us and from utilizing Our Licensed Rights as We make available to Our franchisees through and under franchise agreements[.]

<u>Id.</u> at 1.6.

28.     The Franchise Agreement further states:

> You acknowledge and agree that, in the administration of this Agreement and in taking actions with respect to Our relationship with You, We must take into account the needs of the System, and the effect upon the System as a whole, and the need to protect the Marks for the benefit of the System[.]

Id. at 1.7.

29.     Much of MSC's proprietary information that it makes available to its franchisees is contained within its Recruiter Training Manual and Brand Standards Manual. Those documents contain more than 300 pages of extensive and detailed proprietary information about:

a.     How to successfully recruit and market to healthcare professionals, including physicians, nurses, medical coders, and billers;

b.     Licensing requirements for all health care professions, including state-specific requirements;

c.     Licensure through NURSYS which describes itself as the only national database for verification of nurse licensure, discipline and practice privileges for nurses licensed in participating boards of nursing, including all states in the Nurse Licensure Compact;

d.     Summaries and explanations about specific nursing specialties;

e.     Summaries and explanations of different types of healthcare organizations;

f.     Summaries of different business structures and best practices for franchisees.

30.     Through the Franchise Agreement, MSC also provides to franchisees, such as Pasture Gate, proprietary information contained in MSC's customized customer relationship management database and applicant tracking system. Among other things, that database and applicant tracking system provides customer leads – including names and contact information for healthcare professionals and organizations – amassed over the course of approximately thirty years; confidential lists of client/customer vacancies; real-time and specific information for

client/customer needs and preferences for vacant positions; and checklists and forms that MSC developed over a period of years to assist franchisees in evaluating and placing candidates.

31. Plaintiff MSC takes great care to safeguard its proprietary and confidential trade secrets. The Franchise Agreement, Brand Standards Manual, and Training Manual repeatedly refer to the confidentiality of MSC's information.

32. Additionally, by agreeing to the terms of the Franchise Agreement, Pasture Gate and Michael Dunmire agreed and acknowledged as follows:

> ***You, and persons controlling, controlled by or under common control with You, specifically acknowledge that, pursuant to this Agreement, You will receive valuable specialized training, trade secrets, and Confidential Information***, including, without limitation, information regarding the management, operations, marketing, advertising, and related information, materials, methods and techniques of Ours and Our System which are beyond the present skills and experience of You and Your managers and employees, and that the value of this information arises not only from the time, effort and money that went into its compilation but also from its usage by all franchisees. ***You acknowledge that such specialized training, trade secrets, and Confidential Information provide a competitive advantage and will be valuable to You in the operation of the Franchised Business, and that gaining access to such specialized training, trade secrets, and Confidential Information is therefore a primary reason why You are entering into this Agreement.***[4]

Id. at 1.40-1.41.

33. Additional critical terms of the Franchise Agreement are as follows:

> ***You acknowledge that Your entire knowledge of the operation of the Franchised Business, including without limitation the contents of the Operations Manual, list of vendors, and the specifications, equipment, standards, and operating procedures of the Franchised Business, is derived from information disclosed to You by Us, and that such Operations Manual and such other information is confidential and Our trade secret. You shall maintain the absolute confidentiality of the Operations Manual and all such other proprietary information***

---

[4] All emphasis is added unless otherwise stated. Capitalized terms are defined in the Franchise Agreement.

*You receive from Us, both during and after the term of the Franchise Agreement.* You shall disclose Confidential Information only to those employees or contractors who need such Confidential Information to perform their job functions, and only to the extent necessary for them to do so. Prior to disclosing any Confidential Information, You shall require all such employees or contractors to sign confidentiality and non-compete agreements in a form proscribed by Us and shall forward a copy of same to Us. You agree that You shall not use the Operations Manual and such other information in any other business or in any manner not specifically authorized or approved in writing by Us.

<u>Id.</u> at 1.32.

34.     The Franchise Agreement further states:

In consideration for such specialized training, trade secrets, Confidential Information and exclusive rights described above, ***You and persons controlling, controlled by or under common control with You agree and covenant that during the term of this Agreement*** and for a continuous uninterrupted period commencing upon the effective date of expiration or termination of this Agreement or the date that You begin to comply with this Section, whichever is later, and for two (2) years thereafter, except as otherwise approved in writing by Us, ***You shall not, either directly or indirectly, for You, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation or other business entity***:

(i) solicit*,* divert or attempt to solicit or attempt to divert any business or Client or Candidate of the Franchised Business to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, ***any other act deemed by Us to be injurious or prejudicial to the goodwill associated with Our Licensed Rights and Our System***; or

(ii) ***own, manage, maintain, operate, engage in, advise, consult with, invest in, be employed by or perform services as a director, officer, manager, representative, agent, or otherwise, or have any direct or indirect interest in any business (a) specializing, in whole or in part, in offering to the public substantially similar products and/or services to those products and/or services offered by Your Franchised Business*** prior to the termination or expiration of this Agreement (a "Competitive Business") or (b) which is granting franchises or licenses to others to operate a Competitive Business within a fifty (50) mile radius of the Designated Territory of Your former Franchised Business and/or of any franchised business owned by any MSC franchisee, MSC or MSC affiliate.

<u>Id.</u> at 1.41.

35.	In signing the Franchise Agreement and personal guaranty, Defendant Michael Dunmire agreed as follows:

> You expressly acknowledge that You possess skills and abilities of a general nature and have other opportunities for exploiting such skills. Consequently, You acknowledge that enforcement of the covenants made in this Section will not deprive You of Your personal goodwill or ability to earn a living.

Id.

36.	On September 15, 2020, Defendant Michael Dunmire, in his individual capacity, signed a Non-Disclosure, Non-Solicitation and Non-Competition Agreement with Pasture Gate and MSC (the "MD Non-Disclosure Agreement"), which states that he will:

> receive MSC's Trade Secrets in confidence, maintain them in confidence, and use them only in the course of [his] employment by or contract with [Pasture Gate] and then only in connection with the development and/or maintenance by [Pasture Gate] of health care recruitment business using the MSC MEDICAL SEARCH SYSTEM for so long as [Pasture Gate] is licensed by MSC to use the MSC MEDICAL SEARCH SYSTEM.
>
> *	*	*
>
> [not] directly or indirectly, for himself or through, on behalf of or in conjunction with any person, partnership, limited liability company, corporation, or business entity, engage in or acquire any financial or beneficial interest in (including interest in corporations, partnerships, limited liability company, trusts, unincorporated associations or joint ventures), advise, help or make loans to any entity involved in business which is the same as or similar to the MSC MEDICAL SEARCH SYSTEM including, but not limited to, any business which is, or is intended to be located, within the United States or Canada[.]

Id. at 1.89-1.90.

37.	Similarly, on or about February 11, 2022, Defendant Denise Dunmire agreed in a certain Non-Disclosure and Non-Competition Agreement with MSC and Pasture Gate (the "DD Non-Disclosure Agreement") the she will:

receive MSC's Trade Secrets in confidence, maintain them in confidence, and use them only in the course of [her] employment by or contract with [Pasture Gate] and then only in connection with the development and/or maintenance by [Pasture Gate] of management recruitment business using the MSC SYSTEM for so long as [Pasture Gate] is licensed by MSC to use the MSC SYSTEM.

She also agreed that she will not:

Directly or indirectly, do any act or omit to do any act, which would or would likely to be (sic) injurious or prejudicial to the goodwill associated with the MSC SYSTEM.

\*     \*     \*

Directly or indirectly, for [herself] or through, on behalf of or in conjunction with any person, partnership, limited liability company, corporation, or business entity, engage in or acquire any financial or beneficial interest in (including interest in corporations, partnerships, limited liability company, trusts, unincorporated associations or joint ventures), advise, help or make loans to any entity involved in business which is the same as or similar to that conducted by MSC including, but not limited to, any business which provides management recruitment services which business is, or is intended to be located, within the United States or Canada[.]

\*     \*     \*

Divert or attempt to divert, directly or indirectly, any business, business opportunity, customer, management candidate or any client of any MSC franchised business to any competitor[.]

DD Non-Disclosure Agreement at 2.2-2.4.[5]

38.    Defendants Pasture Gate, Michael Dunmire, and Denise Dunmire knew that they would receive MSC's confidential information under their respective agreements, and also knew that anyone with whom they shared confidential information would be required to agree, in writing, to maintain the confidentiality of such information.

39.    The Franchise Agreement also provides:

---

[5] The DD Non-Disclosure Agreement is attached to the Gruzd Dec. at Ex. 2.1-2.5.

You shall use the Licensed Rights strictly in accordance with the terms of this Agreement. Any unauthorized use of the Licensed Rights is and shall be deemed an infringement of Our rights is and shall be deemed an infringement of Our rights and a material breach of this Agreement.

Franchise Agreement at 1.20.

In order to protect the Licensed Rights and associated goodwill, You shall: . . . Operate under the name ALL MED SEARCH . . . in accordance with the Franchised Business System You selected in Paragraph 10 of the Recitals and advertise only under the Licensed Rights designated by US, and use such rights without prefix or suffix, except where such use may conflict with a prior registration or use, in which event You shall operate and advertise only under such other names as We have previously approved in writing.

Id. at 1.28.

At any time, during the term of this Agreement or thereafter, You shall not, either directly or indirectly, for You, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation or other business entity, use, in connection with the operation of any business other than the Franchised Business, any of the Licensed Rights, or any other names, marks, systems, insignias, or symbols provided or approved by Us to You pursuant to this Agreement, or cause or permit any such business to look like, copy or imitate a MEDICAL SEARCH or other MSC Franchised Business or to be operated in a manner tending to have such effect.

Id. at 1.41.

40. In 2022, Defendants' ALL MEDSEARCH franchise generated approximately $300,000 in gross revenue. Toward the end of that year, however, Defendants began to engage in conduct that violates the Franchise Agreement.

41. Beginning in the Fall of 2022, if not earlier, Defendant Michael Dunmire and his sister, Defendant Denise Dunmire, began to develop plans to establish a new recruiting firm that would be a direct competitor with MSC in the recruitment of healthcare professionals.

42.     Defendant Denise Dunmire works with Defendants Pasture Gate and Michael Dunmire in their ALL MEDSEARCH franchise, and Defendant Michael Dunmire represents that she is an equal partner in the business.

43.     On or about September 21, 2022, Defendant Michael Dunmire filed Articles of Organization with the North Carolina Secretary of State to create Pyxis.

44.     The Pyxis Articles of Organization identify Defendants Michael Dunmire and Denise Dunmire as its members.

45.     Pyxis' profile on the LinkedIn social media website states that the company is a "Staffing and Recruiting" firm, with specialties in "Health Care, Restaurants, Leadership, Executive, and Dental[.]"

46.     Similarly, up until on or about May 1, 2023, the Pyxis website stated that its "Recruiting Services" include "Senior Level Management", "Healthcare", "Hospitality", and "Technology".[6]

47.     Shortly after forming Pyxis, and despite working with Pasture Gate as an MSC franchisee since September 2020, on October 4, 2022, Defendant Michael Dunmire requested a copy of the MSC Brand Standards Manual from a support specialist in MSC's corporate office.

48.     Then, on or about October 11, 2022, Defendant Michael Dunmire sent to himself and Denise Dunmire an e-mail (the "October 11 e-mail") discussing Pyxis' strategy. Both Dunmire Defendants received the e-mail at their ALL MEDSEARCH e-mail addresses.

49.     Upon information and belief, the October 11 e-mail references Pyxis' future publication of open positions at hospitals, references the Dunmires' collaboration with a company

_____

[6] The reference to Health Care has since been removed.

named i4 Search Group, LLC ("i4 Search Group"), and discusses a new recruiting concept for a company to be named "Superior Talent Source."

50.     i4 Search Group is a healthcare recruiting firm that places medical professionals in healthcare facilities throughout the United States. It was organized under the laws of the State of Texas in 2019. i4 Search Group is one of MSC's direct competitors and, like MSC, it also employs a franchise business model.

51.     On or about October 28, 2022 – roughly two weeks after the Dunmires exchanged e-mails about the Superior Talent Source concept – Articles of Organization were filed in the State of Ohio for a new company named Hospitality Recruiting Partners LLC.

52.     As of the date of this Complaint, three of i4 Search Group's four members, partners, and/or principals also are members, partners, and/or principals of Hospitality Recruiting Partners.

53.     On November 30, 2022, Defendant Denise Dunmire sent an e-mail to Defendant Michael Dunmire – again, both to and from their ALL MEDSEARCH e-mail addresses – describing the non-compete and confidentiality provisions in the Franchise Agreement and/or related documents as "a potential problem[.]"

54.     On December 6, 2022, one of i4 Search Group's members, Scott Butts, also a member of Hospitality Recruiting Partners, sent Defendant Dunmire a document for review from his i4 Search Group e-mail account, asking him in the e-mail subject line to "look over before I put it in DocuSign[.]" DocuSign is a cloud-based software service that allows for the electronic review and execution of documents, including contracts.

55.     Just two days later, on December 8, 2022, Hospitality Recruiting Partners registered Superior Talent Source as its trade name with the Ohio Secretary of State.

56.     Superior Talent Source holds itself out as a recruiting agency that focuses its efforts on placing executives in the hospitality industry, particularly with respect to restaurants, hotels, country clubs, and resorts.

57.     Defendant Michael Dunmire currently works for and/or with Superior Talent as its Director of Operations.

58.     On or about December 26, 2022, Defendant Denise Dunmire sent Defendant Michael Dunmire an e-mail that, upon information and belief, discusses potential work with i4 Search Group to place healthcare candidates at MSC clients. The e-mails were sent to and from ALL MEDSEARCH e-mail addresses.

59.     By virtue of his work with Superior Talent Source, Defendant Dunmire currently is working in the hospitality recruiting industry with the principals of one of MSC's primary healthcare recruiting competitors – i4 Search Group.

60.     Further, through Pyxis, Defendants Michael Dunmire and Denise Dunmire own and/or have created a company that will compete directly with MSC and, based on the October 11, 2022 e-mail and Pyxis website, they were preparing at that time to perform recruiting services in the healthcare industry.

61.     As of the date of this Complaint, the Pyxis website, while unlawfully appropriating MSC's ALL MEDSEARCH trademark, advertises several healthcare job openings as indicated below:









| Title ⬍ | Date ⬍ | Location ⬍ |
|---|---|---|
| Nurse Practitioner/Physician's Assistant \| Primary Care \| Great PNW Opportunity! | 21 days ago | Elma, WA |
| Nurse Practitioner/Physician's Assistant \| Urgent Care \| Great PNW Opportunity! | 21 days ago | Elma, WA |



| | | |
|---|---|---|
| Emergency Medicine Physician | 21 days ago | Elma, WA |
| Registered Nurse (RN) \| Up to 20K Sign-on Bonus | 27 days ago | Spokane, WA |
| RN Clinical Manager - Surgical Services | 27 days ago | Athens, GA |
| Transplant Unit RN \| Competitive Sign-on | about 1 month ago | Atlanta, GA |
| Care Management Specialist (LMSW/LCSW) | about 1 month ago | Atlanta, GA |
| Charge RN - Med Surg | about 2 months ago | Snellville, GA |
| NICU Registered Nurse (RN) \| Up to 20K Sign-on | about 2 months ago | Snellville, GA |

62.     Many of the listings on the Pyxis website are for healthcare positions located within the territory of Pasture Gate's ALL MEDSEARCH franchise, the territory of other MSC franchisees, or the territories with MSC clients that are shared with all MSC franchisees.

63.     In addition to the breaches already alleged, other examples of Defendants' violations of their contractual obligations to MSC include, but are not limited to the following:

a.      On or about February 22, 2023, Defendant Denise Dunmire, using her ALL MEDSEARCH e-mail account, shared information about one of MSC's contracts with a hospital system with a Pyxis employee identified as "Meagan Gregg."

b.      Defendants Pasture Gate, Michael Dunmire, and/or Denise Dunmire have allowed Ms. Gregg, without any authorization by MSC, to access Plaintiff MSC's customer relationship management database and applicant tracking system to solicit and/or place healthcare candidates. Ms. Gregg has not signed any confidentiality or noncompete agreement as required by the Franchise Agreement, and if she has, Defendants have not provided a copy to Plaintiff.

c.      Defendants Pasture Gate, Michael Dunmire, and Denise Dunmire have shared MSC's confidential customer lists, customer preferences, and other information not known to the general public with Pyxis.

64.     On April 28, 2023, Plaintiff MSC demanded that Defendants Pasture Gate and Dunmire immediately cease all actions in violation of the Franchise Agreement. In so doing, MSC gave notice of potential claims, advised of seeking injunctive relief if necessary, and also sought

information from Pasture Gate and Dunmire regarding their relationships with Pyxis, Superior Talent Group, and i4 Search Group.

65.     On April 28, 2023, MSC also requested that Defendants Pasture Gate and Michael Dunmire preserve copies of all documents and records, including Electronically Stored Information, that refer or relate to their ownership of and/or involvement with Pasture Gate, Pyxis, i4 Search Group, and Hospitality Recruiting Partners LLC d/b/a Superior Talent Source.

66.     In his response to MSC's demand, Defendant Michael Dunmire, *inter alia*, threatened to "involve and engage current vendors under contract" who MSC "had a major partnership with" and to "involve other franchisees, and officer's (sic) past and present as needed."

67.     In so doing, Defendants Pasture Gate and Michael Dunmire expressly threatened to further breach the Franchise Agreement by violating the provision that states, "You shall not, in any manner, interfere with, disturb, disrupt, or jeopardize Our System or Business or any business of Our other franchisees or Clients." Franchise Agreement at 1.24.

68.     On May 2, 2023, Pasture Gate, through its counsel, further denied any default under the Franchise Agreement.

69.     On May 6, 2023, MSC received electronic notice that Defendant Michael Dunmire had initiated and successfully completed a "remote device wipe" of electronic data associated with Pasture Gate's ALL MEDSEARCH franchise.

70.     On or around the same date, MSC received notifications that someone had been attempting to access and reset the password for its customer relationship management database and applicant tracking system. On May 8, 2023, MSC learned that the IP address associated with the attempts to reset the password referenced herein is located in North Carolina.

71. In light of Defendants' conduct, Plaintiff seeks a temporary restraining order, preliminary injunction, and permanent injunction enjoining the ongoing breaches of the Franchise Agreement and related agreements cited herein.

72. The Franchise Agreement specifically authorizes the relief requested herein, as Defendants agreed:

> Nothing in this Agreement shall bar Our right to seek specific performance of the provisions of this Agreement and injunctive relief against threatened conduct that will cause Us loss or damages under customary equity rules, including applicable rules for obtaining restraining orders and preliminary injunctions. You specifically acknowledge that any failure by You to comply with the requirements of Sections 25, 26 and/or 27 of this Agreement will cause Us irreparable injury and that We shall be entitled to obtain specific performance of, and/or an injunction against any violation of, such requirements. You agree to pay all court costs and reasonable attorneys' fees incurred by Us in obtaining specific performance of, and/or an injunction against any violation of, the requirements of this Agreement. The foregoing remedies shall be in addition to any other legal or equitable remedies that We may possess.

Franchise Agreement at 1.60.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT
### <u>Against Pasture Gate</u>

73. Plaintiff realleges the foregoing paragraphs and incorporates them herein.

74. The Franchise Agreement is a valid contract supported by the consideration cited therein.

75. Defendant Pasture Gate has breached the Franchise Agreement by, among other things:

a.      Working in concert with Pyxis, a direct competitor of MSC, to recruit and place healthcare professionals in Pasture Gate's assigned territory under the Franchise Agreement and throughout the United States;

b.      Allowing Pyxis to use MSC's trademark without authorization;

c.      Sharing MSC's confidential information and trade secrets with third parties without authorization.

d.      Working directly or indirectly with i4 Search Group – one of MSC's competitors – to establish a new hospitality recruiting business; and

e.      Using or allowing the use of MSC's resources and proprietary and confidential trade secrets, including its applicant tracking system, to operate a hospitality recruiting business.

76.      Defendant Pasture Gate's breach of the Franchise Agreement is material.

77.      Plaintiff MSC has suffered damages as a result of Defendant Pasture Gate's breach of the Franchise Agreement including, but not limited to economic loss, at least in part by way of suppressed revenue arising from the diversion of business, lost future revenue as specified under the Franchise Agreement, and the loss of goodwill.

78.      As a consequence of Defendant Pasture Gate's wrongful actions, MSC has suffered and/or will continue to suffer irreparable harm, including the loss of goodwill, and financial and economic loss for which there is no adequate remedy at law.

79.      Absent injunctive relief, Defendant Pasture Gate will continue to violate its contractual obligations.

## COUNT II
## BREACH OF CONTRACT
## <u>Against Michael Dunmire</u>

80.     Plaintiff realleges the foregoing paragraphs and incorporates them herein.

81.     The Franchise Agreement, Guaranty Agreement, and MD Non-Disclosure Agreement are valid contracts supported by the consideration cited therein.

82.     Defendant Michael Dunmire has breached these agreements by, among other things:

  a.  Creating and working in concert with Pyxis, a direct competitor of MSC, to recruit and place healthcare professionals in Pasture Gate's assigned territory under the Franchise Agreement and throughout the United States;

  b.  Allowing Pyxis to use MSC's trademark without authorization;

  c.  Sharing MSC's confidential information and trade secrets with third parties without authorization.

  d.  Working directly or indirectly with i4 Search Group – one of MSC's competitors – to establish a new hospitality recruiting business; and

  e.  Using or allowing the use of MSC's resources and proprietary and confidential trade secrets, including its applicant tracking system, to operate a hospitality recruiting business.

83.     Defendant Michael Dunmire's breach of the Franchise Agreement, Guaranty Agreement, and MD Non-Disclosure Agreement is material.

84.     Plaintiff MSC has suffered damages as a result of Defendant Michael Dunmire's breach of these agreements including, but not limited to economic loss, at least in part by way of

suppressed revenue arising from the diversion of business, lost future revenue as specified under the Franchise Agreement, and the loss of goodwill.

85. As a consequence of Defendant Michael Dunmire's wrongful actions, MSC has suffered and/or will continue to suffer irreparable harm, including the loss of goodwill, and financial and economic loss for which there is no adequate remedy at law.

86. Absent injunctive relief, Defendant Michael Dunmire will continue to violate its contractual obligations.

**COUNT III**
**BREACH OF CONTRACT**
<u>**Against Denise Dunmire**</u>

87. Plaintiff realleges the foregoing paragraphs and incorporates them herein.

88. The DD Non-Disclosure Agreement is a valid contract supported by the consideration cited therein.

89. Defendant Denise Dunmire has breached this contract by, among other things:

    a. Creating and working in concert with Pyxis, a direct competitor of MSC, to recruit and place healthcare professionals in Pasture Gate's assigned territory under the Franchise Agreement and throughout the United States;

    b. Working directly or indirectly with i4 Search Group – one of MSC's competitors – to establish a new hospitality recruiting business; and

    c. Sharing MSC's confidential information and trade secrets with third parties without authorization.

90. Defendant Denise Dunmire's breach of the DD Non-Disclosure Agreement is material.

91.     Plaintiff MSC has suffered damages as a result of Defendant Denise Dunmire's breach of contract including, but not limited to economic loss, at least in part by way of suppressed revenue arising from the diversion of business, and the loss of goodwill.

92.     As a consequence of Defendant Denies Dunmire's wrongful actions, MSC has suffered and/or will continue to suffer irreparable harm, including the loss of goodwill, and financial and economic loss for which there is no adequate remedy at law.

93.     Absent injunctive relief, Defendant Denise Dunmire will continue to violate its contractual obligations.

### COUNT IV

### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, *et seq.*
### Against All Defendants

94.     Plaintiff realleges the foregoing paragraphs and incorporates them herein.

95.     Plaintiff's Licensed Rights and MSC System, including but not limited to the Brand Standards Manual, Recruiting Training Manual, and customer relationship management database and applicant tracking system are trade secrets.

96.     Plaintiff's trade secrets derive independent economic value by not being readily accessible through independent means to either the general public or MSC's competitors, all of which can profit from their use and disclosure.

97.     Plaintiff's trade secrets are related to recruiting services used in and intended for use in interstate commerce.

98.     Plaintiff protects its trade secrets through the use of nondisclosure agreements, markings on documents, and other measures to maintain their secrecy.

99. Plaintiff shared its trade secrets with Defendants Pasture Gate, Michael Dunmire, and Denise Dunmire pursuant to the terms of the Franchise Agreement, Guaranty Agreement, MD Non-Disclosure Agreement, and DD Non-Disclosure Agreement.

100. Defendants Pasture Gate, Michael Dunmire, and Denise Dunmire knew and know that Plaintiff's trade secrets are confidential and not meant to be shared without MSC's authorization.

101. Defendants Pasture Gate, Michael Dunmire, and Denise Dunmire agreed not to share Plaintiff's trade secrets, and had contractual duties and obligations to maintain their confidentiality.

102. Defendants have misappropriated Plaintiff's trade secrets by sharing them with third parties who had no right to receive them, including but not limited to Pyxis.

103. Defendant Pyxis, without any authority or consent granted by MSC, has misappropriated Plaintiff's trade secrets. Pyxis knew that it did not have any authority to receive, use, or otherwise have access to Plaintiff's trade secrets.

104. Plaintiff has suffered damages, injury, and irreparable harm as a result of Defendants' misappropriation of its trade secrets.

## COUNT V

**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT, Fla. Stat. § 688.001, *et. seq.*
(Against Defendants Pasture Gate, Michael Dunmire, and Denise Dunmire)**

105. Plaintiff realleges the foregoing paragraphs and incorporates them herein.

106. Plaintiff has suffered damages, injury and irreparable harm as a result of Defendants' misappropriation of its trade secrets.

**COUNT VI**

**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF NORTH CAROLINA'S TRADE SECRETS PROTECTION ACT, N.C. Gen. Stat. §66-153 *et. seq.*<br>(Against Defendant Pyxis)**

107.    Plaintiff realleges the foregoing paragraphs and incorporates them herein.

108.    Plaintiff has suffered damages, injury, and irreparable harm as a result of Defendant Pyxis' misappropriation of its trade secrets.

**COUNT VII**

**TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114<br>Against Defendant Pyxis**

109.    Plaintiff realleges the foregoing paragraphs and incorporates them herein.

110.    Plaintiff MSC owns a valid trademark in ALL MEDSEARCH®.

111.    Defendant Pyxis used and continues to use the mark in interstate commerce and without Plaintiff's authorization.

112.    Defendant Pyxis used and is using the mark in connection with the sale, offering sale, and advertising of services.

113.    Defendant Pyxis' use of the mark is likely to confuse consumers, and will result in the dilution of its mark and the loss of goodwill.

114.    Plaintiff MSC has suffered damages, economic loss, and injury for which there is no adequate remedy at law by Defendant Pyxis' use of the mark.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court for the following relief:

1.    A Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction that immediately:

a. restrains and enjoins Defendants from disclosing any of Plaintiffs' trade secrets and/or confidential information;

b. restrains and enjoins Defendants Pasture Gate, Michael Dunmire, and Denise Dunmire from rendering any services to any health care recruiting firm for a period of two years, or such other time that the Court deem reasonable;

c. restrains and enjoins Defendant Pyxis from using Plaintiff MSC's ALL MEDSEARCH trademark;

d. requires that Defendants preserve all information currently stored on their personal computer(s) or other computer(s) over which Defendants have possession, custody, or control, and any personal digital assistant or mobile telephone, including any information stored on backup media, and that Defendants produce an image of the computer hard drive(s) from any and all computers which Defendants have used since September 15, 2020, and which is or are in Defendants' possession, custody, or control;

e. requires that Defendants preserve all e-mails, whether on a computer or mobile electronic device under their control, on Pyxis' computer(s), or on an internet mail server related to any work for or with i4 Search Group, Superior Talent, and/or Pyxis; and

f. enjoins Defendants Michael Dunmire, Denise Dunmire, and Pasture Gate from otherwise violating the terms of the Franchise Agreement, MD Non-Dislosure Agreement, and DD Non-Disclosure Agreement.

2. An award of damages for any recoverable past and future losses arising from Defendants' unlawful conduct.

3.     An award of attorney's fees and allowable costs and expenses incurred in connection with this action.

4.     A trial by jury on all issues so triable.

5.     An award of such other and further relief as this Court may deem just and proper.

Date:   May 8, 2023                              Respectfully submitted,

                                                 */s/ Dhamian A. Blue*
                                                 Dhamian A. Blue

                                                 */s/ Daniel T. Blue, III*
                                                 Daniel T. Blue, III
                                                 BLUE LLP
                                                 205 Fayetteville St., Suite 300
                                                 Raleigh, North Carolina 27601
                                                 dab@bluellp.com
                                                 dtb3@bluellp.com
                                                 Tel: 919-833-1931
                                                 Fax: 919-833-8009
                                                 N.C. Bar No. 31405 [DAB]
                                                 N.C. Bar No. 27720 [DTB]

## VERIFICATION

Pursuant to 28 U.S.C. §1746, Nadia Gruzd does hereby state as follows:

1. I am over 21 years of age, and I am under no legal or mental disability or duress.

2. I am the owner, Chief Executive Officer, and Chief Operating Officer of Medical Search Consultants LLC ("MSC"), and I am authorized to make this declaration on behalf of MSC.

3. I hereby certify that I have read the foregoing First Amended Verified Complaint for Injunctive Relief and Damages, and that the statements set forth therein are true and accurate and based on my own personal information, except those matters alleged upon information and belief.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on May 8, 2023

_Nadia Gruzd_
Nadia Gruzd