IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00118-MR-WCM

| | | |
|---|---|---|
| MEDICAL SEARCH CONSULTANTS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| PASTURE GATE HOLDINGS, INC.; PYXIS NYF LLC; MICHAEL ROBERT DUNMIRE; and DENISE MARIE DUNMIRE, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court on Defendants' "Partially Opposed Motion to Stay" (the "Motion to Stay," Doc. 35) and Defendants' "Corrected Partially Opposed Motion for Stay" (the "Corrected Motion to Stay," Doc. 36).[1]

I. Procedural Background

On May 5, 2023, Medical Search Consultants, LLC ("MSC") filed a Verified Complaint for Injunctive Relief and Damages against Pasture Gate Holdings, Inc. ("Pasture Gate"), Pyxis NYF LLC ("Pyxis"), Michael Robert Dunmire ("Michael Dunmire"), and Denise Marie Dunmire ("Denise Dunmire") (collectively, "Defendants"). Doc. 1.

---

[1] Defendants state that the Corrected Motion to Stay corrected a scrivener's error in the signature block on the prior motion only. Doc. 36 at 1, n.1.

1

On May 8, 2023, MSC filed a First Amended Verified Complaint for Injunctive Relief and Damages (the "Amended Complaint"), along with a Motion for Temporary Restraining Order. Docs. 4, 5, 6.

On May 10, 2023, the presiding District Judge granted in part and denied in part MSC's Motion for Temporary Restraining Order and set a deadline by which MSC was to file a motion for a preliminary injunction, in the event MSC wished to pursue such relief. Doc. 15.

On May 24, 2023, MSC filed an Uncontested Motion for Preliminary Injunction, Doc. 27. That motion was granted, and a preliminary injunction was entered on May 25, 2023. Doc. 28.

On June 13, 2023, Pasture Gate and Michael Dunmire submitted a Demand for Arbitration to the American Arbitration Association, seeking to commence arbitration proceedings (the "Arbitration") against MSC and its Chief Executive Officer, Nadia Gruzd ("Gzurd"). See Doc. 36-2 at 2–9.

On June 29, 2023, MSC and Gzurd filed Objections, an Answering Statement, and Counterclaims in the Arbitration. Doc. 36-2 at 10–34.

On July 24, 2023, Defendants filed an Answer to the Amended Complaint. Doc. 33.

On August 15, 2023, the parties filed a Joint Certification of Initial Attorneys' Conference and Discovery Plan. Doc. 34.[2]

On August 21, 2023, Defendants filed the Motion to Stay and the Corrected Motion to Stay. MSC has responded to the Corrected Motion to Stay, and Defendants have replied. Docs. 38, 40.

## II. The Amended Complaint and the Arbitration

### A. The Amended Complaint

In its Amended Complaint, MSC alleges that it is a healthcare recruiting company that, through its franchisees, places healthcare professionals into full-time, permanent positions in numerous types of medical facilities and associated businesses throughout the United States. Doc. 4 at ¶¶ 10–12.

MSC alleges that it and its franchisees conduct this recruitment work under the trade name and service mark ALL MEDSEARCH® and that ALL MEDSEARCH is a trademark that is registered with the United States Patent and Trademark Office. Id. at ¶¶ 14–15.

On September 15, 2020, MSC and Pasture Gate entered into a Franchise Agreement (the "Franchise Agreement") with Pasture Gate which authorized Pasture Gate to establish and operate an ALL MEDSEARCH franchise for the recruitment and placement of healthcare professionals in the Atlanta

---

[2] In light of the Corrected Motion to Stay, no Pretrial Order and Case Management Plan has been entered at this time.

3

metropolitan area "and in any of its territories that had not yet been sold." Id. at ¶ 19.

MSC contends that the Franchise Agreement granted certain "Licensed Rights" which allowed Pasture Gate access to "business and marketing plans, salary structures, customer lists, vendor contracts, computer system details, training manuals, and other proprietary information," prohibited disapproved use of MSC's trademark, and included acknowledgments by Pasture Gate that it was receiving specialized training, trade secrets, and confidential information. Id. at ¶¶ 24, 25, 26, 32, 33.

Michael Dunmire signed the Franchise Agreement on behalf of Pasture Gate. Id. at ¶ 22. He also executed a Guaranty Agreement, which made him personally liable for any breach of the Franchise Agreement by Pasture Gate, and signed a Non-Disclosure, Non-Solicitation and Non-Competition Agreement ("Non-Disclosure Agreement"). Id. at ¶¶ 23, 36.

On or about February 11, 2022, Michael Dunmire's sister, Denise Dunmire, who was "an employee, independent contractor, and/or officer of" Pasture Gate, signed a Non-Disclosure Agreement. Id. at ¶¶ 5, 37, 41.

However, beginning in the Fall of 2022, "if not earlier," Michael Dunmire and Denise Dunmire "began to develop plans to establish a new recruiting firm that would be a direct competitor with MSC in the recruitment of healthcare professionals." Id. at ¶ 41.

4

On September 21, 2022, Michael Dunmire filed Articles of Organization to create Pyxis, a limited liability company of which Michael Dunmire and Denise Dunmire were members. Id. at ¶¶ 43–44.

MSC alleges that Pyxis was described as a staffing and recruiting firm, that shortly after forming Pyxis Michael Dunmire requested a copy of the MSC Brand Standards Manual from MSC's corporate office, that he and Denise Dunmire, upon information and belief, collaborated with a company named i4 Search Group, LLC which is one of MSC's direct competitors, that Michael Dunmire and Denise Dunmire own and/or have created a company (Pyxis) that will compete directly with MSC, and that Pyxis's website unlawfully appropriated MSC's trademark. Id. at ¶¶ 45–61.

The Amended Complaint asserts the following claims: 1) breach of contract against Pasture Gate for breach of the Franchise Agreement; 2) breach of contract against Michael Dunmire for breach of the Franchise Agreement, Guaranty Agreement, and his Non-Disclosure Agreement; 3) breach of contract against Denise Dunmire for breach of her Non-Disclosure Agreement; 4) misappropriation of trade secrets in violation of federal law against all Defendants; 5) misappropriation of trade secrets in violation of Florida law against Pasture Gate, Michael Dunmire, and Denise Dunmire; 6) misappropriation of trade secrets in violation of North Carolina law against Pyxis; and 7) trademark infringement against Pyxis. Id. at ¶¶ 73–114.

5

### B. The Arbitration

In the Demand for Arbitration, Pasture Gate and Michael Dunmire assert that MSC has erroneously claimed that Pasture Gate and Michael Dunmire defaulted under the Franchise Agreement, though Pasture Gate operated in accordance with the Franchise Agreement. Pasture Gate and Michael Dunmire also assert that MSC and Gruzd have erroneously contended that Pasture Gate and Michael Dunmire misappropriated MSC's proprietary trade secrets and methods. Additionally, Pasture Gate and Michael Dunmire contend that MSC and Gruzd tortiously interfered with Pasture Gate's business relationships, have committed civil theft and conversion under Florida law, and have breached the Franchise Agreement.

In response to the Demand for Arbitration, MSC asserted the following counterclaims: 1) breach of contract against Pasture Gate for breach of the Franchise Agreement; 2) breach of contract against Michael Dunmire for breach of the Franchise Agreement, the Guaranty Agreement, and his Non-Disclosure Agreement; 3) misappropriation of trade secrets in violation of federal law against Pasture Gate and Michael Dunmire; and 4) misappropriation of trade secrets in violation of Florida law against Pasture Gate and Michael Dunmire.

## III. Discussion

The parties agree that MSC's claims in this litigation against Pasture Gate and Michael Dunmire are subject to arbitration pursuant to a provision in the Franchise Agreement and should be stayed pending the completion of the Arbitration.

The parties also agree that all of MSC's claims against Denise Dunmire and Pyxis are <u>not</u> covered by that arbitration provision.

Defendants, however, argue that MSC's claims against Denise Dunmire and Pyxis should be stayed nonetheless, while MSC contends that only MSC's claims against Pasture Gate and Michael Dunmire should be stayed pending completion of the Arbitration (and that MSC's claims against Denise and Pyxis should proceed). Doc. 38 at 2. In short, the issue presented by the Corrected Motion to Stay is whether MSC's claims against Denise Dunmire and Pyxis should be stayed along with MSC's claims against Michael Dunmire and Pasture Gate.

"A decision to stay related claims pending arbitration is a matter entrusted to the discretion of the district court." <u>In re Cotton Yarn Antitrust Litig.</u>, 505 F.3d 274, 301, n.12 (4th Cir. 2007) (citing <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 20 n.23 (1983)); <u>Summer Rain v. Donning Co. Publishers, Inc.</u>, 964 F.2d 1455, 1461 (4th Cir. 1992) ("The decision whether to stay the litigation of the non-arbitrable issues is a matter

7

largely within the district court's discretion to control its docket."); Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88 (4th Cir. 1996) (same).

"When arbitration is likely to settle questions of fact pertinent to nonarbitrable claims, 'considerations of judicial economy and avoidance of confusion and possible inconsistent results ... militate in favor of staying the entire action.' In such cases, the stay can apply to parties who may play no role in the arbitration." Am. Heart Disease Prevention Found., Inc. v. Hughey, F.3d 389 (Table), 1997 WL 42714, at *6 (4th Cir. 1997) (quoting Amer. Home Assurance Co. v. Vecco Concrete Constr. Co., Inc., 629 F.2d 961, 963 (4th Cir.1980)) (internal citations omitted); see also Amer. Home Assurance Co., 629 F.2d at 964 (finding that a discretionary stay was appropriate where "questions of fact common to all actions pending in the present matter are likely to be settled" in a pending arbitration proceeding); Swift Enter., LLC v. TruNorth Warranty Plans of N. Am., LLC, No. 1:21-cv-146, 2022 WL 19396072, at *12 (E.D. Tenn. Sept. 30, 2022) (When "determining whether to stay nonarbitrable claims until arbitration is complete, trial courts appear to consider several factors: (1) whether piecemeal litigation of the nonarbitrable claims could result in inconsistent determinations … ; (2) whether piecemeal litigation will be inefficient because the factual issues to be resolved in litigation overlap … ; (3) whether the arbitrable issues predominate the

8

lawsuit; and (4) whether the nonarbitrable claims are of questionable merit.") (quoting 21 Williston on Contracts § 57:63 (4th ed.)); Apex Tool Grp. v. Ingersoll-Rand, No. 12 CVS 5547, 2013 WL 2146223, at *4 (N.C. Super. Ct. May 14, 2013) (when "there exists a likelihood of logically incompatible outcomes as against the two sets of Defendants if Plaintiff's Claims against [one set of Defendants] are not stayed pending prior resolution of Plaintiff's claims against the [other set of Defendants] … [a] stay pending arbitration … will reduce the likelihood that the arbitration panel and trial court will reach inconsistent determinations."); Gaylor, Inc. of N.C. v. Vizor, LLC, No. 15 CVS 839, 2015 WL 6659662 (N.C. Super. Ct. Oct. 30, 2015) (staying non-arbitrable claims where those claims would be impacted by the arbitration).[3]

Here, MSC's counterclaims against Pasture Gate and Michael Dunmire in the Arbitration are substantially similar to, the claims MSC has made against Pasture Gate and Michael Dunmire in this matter. Further, the factual allegations that support MSC's counterclaims in the Arbitration and those that support MSC's claims in the Amended Complaint are substantially similar. Compare Doc. 36-2 at ¶¶ 1-73 with Doc. 4 at ¶¶ 10-72.

---

[3] Defendants cite North Carolina law, Doc. 36 at ¶ 18, while MSC relies on federal law. Doc. 38 at 4–7. Under either federal or North Carolina law, the undersigned reaches the same conclusion. Compare Amer. Heart Disease Prevention Found., Inc. v. Hughey, F.3d 389 (Table), 1997 WL 42714, at *6 (4th Cir. 1997) with Apex Tool Grp. v. Ingersoll-Rand, No. 12 CVS 5547, 2013 WL 2146223, at *4 (N.C. Super. Ct. May 14, 2013).

9

Additionally, both in their Answer in this case and in their Demand for Arbitration, Pasture Gate and Michael Dunmire contend that MSC knew of and acquiesced to Pyxis's use of MSC's trademark, and that Pasture Gate, Michael Dunmire, and Pyxis were involved in recruiting for the hospitality industry instead of the healthcare industry, such that no breach of the Franchise Agreement or Michael Dunmire's Non-Disclosure Agreement occurred. Compare Doc. 36-2 at 2–7 with Doc. 33 at ¶¶ 2, 5.

More significantly for present purposes, factual issues regarding the alleged involvement of Pyxis and Denise Dunmire are inextricably intertwined with the claims and/or counterclaims asserted by MSC, Pasture Gate, and Michael Dunmire in this case and in the Arbitration.

Though the parties appear agree that MSC's claims against Pyxis and Denise Dunmire are not arbitrable under the arbitration clause of the Franchise Agreement, allowing those claims to proceed in this litigation could result in inconsistent results.

Under these circumstances, the undersigned is persuaded that MSC's claims against Pyxis and Denise Dunmire, as well as its claims against Pasture Gate and Michael Dunmire, should be stayed pending the conclusion of the Arbitration. See Charlotte Student Hous. DST v. Choate Constr. Co., No. 18 CVS 5148, 2019 WL 1405851, at *9 (N.C. Super. Ct. Mar. 26, 2019) ("The relevant state and federal statutes contemplate staying litigation in favor of

arbitration, not the other way around …. One reason for this is that arbitration would presumably lead to a faster, less expensive resolution of certain issues, thus narrowing the scope of later litigation …. Those benefits would be lost if litigation of non-arbitrable claims took precedence, and a litigation-first approach could interfere with the arbitration panel's ability to perform its work at a later time.").

**IT IS THEREFORE ORDERED THAT:**

1. "Defendants' Motion to Stay (Partially Opposed)" (Doc. 35) is **DENIED AS MOOT**.
2. "Defendants' Corrected Partially Opposed Motion for Stay" (Doc. 36) is **GRANTED** and this matter is **STAYED** pending the completion of the Arbitration.
3. The parties **SHALL FILE**, by January 8, 2024, a Joint Status Report advising of the status of the Arbitration and shall file additional reports every ninety (90) days thereafter.

Signed: December 8, 2023

W. Carleton Metcalf
United States Magistrate Judge